## UNITED STATES DISTRICT COURT
## DISTRICT OF MAINE

| | | |
|---|---|---|
| CHARLES H. HICKS, JR. | ) | |
| | ) | |
|     *Plaintiff* | ) | |
| | ) | |
| v. | ) | Civil No. 09-393-P-S |
| | ) | |
| MICHAEL J. ASTRUE, | ) | |
| Commissioner of Social Security, | ) | |
| | ) | |
|     *Defendant* | ) | |

## REPORT AND RECOMMENDED DECISION[1]

The plaintiff in this Supplemental Security Income ("SSI") appeal contends that the administrative law judge should have found that his chronic pain syndrome and mental impairment were severe, and that the residual functional capacity assigned to him by the administrative law judge fatally failed to include all of his non-exertional impairments. Itemized Statement of Specific Errors ("Itemized Statement") (Docket No. 10) at 2-7. I recommend that the commissioner's decision be affirmed.

In accordance with the commissioner's sequential review process, 20 C.F.R. § 416.920; *Goodermote v. Secretary of Health & Human Servs.*, 690 F.2d 5, 6 (1st Cir. 1982), the administrative law judge found, in relevant part, that the plaintiff suffered from status post left lumbosacral discectomy with residual pain, an impairment that was severe but which did not

---

[1] This action is properly brought under 42 US.C. § 1383(c). The commissioner has admitted that the plaintiff has exhausted his administrative remedies. The case is presented as a request for judicial review by this court pursuant to Local Rule 16.3(a)(2)(A), which requires the plaintiff to file an itemized statement of the specific errors upon which he seeks reversal of the commissioner's decision and to complete and file a fact sheet available at the Clerk's Office. Oral argument was held before me on June 16, 2010, pursuant to Local Rule 16.3(a)(2)(C), requiring the parties to set forth at oral argument their respective positions with citations to relevant statutes, regulations, case authority, and page references to the administrative record.

1

meet or medically equal the criteria of any impairment listed in Appendix 1 to 20 C.F.R. Part 404, Subpart P (the "Listings"), Findings 3-4, Record at 10-18; that he retained the residual functional capacity to lift and/or carry 20 pounds occasionally and 10 pounds frequently, to stand for one hour at a time for a total of six hours in an eight-hour workday, to sit for about six hours out of an eight-hour workday, to push and/or pull within the weight limits set for lifting and carrying, to climb stairs frequently but never climb ladders, ropes, or scaffolds, to balance, stoop, kneel, crouch, or crawl occasionally, to reach frequently in all directions but only occasionally overhead, and to handle, finger, and feel frequently, but to avoid hazards like unprotected heights or slippery or uneven walking surfaces, Finding 5, *id.* at 19; that he was unable to perform any past relevant work, Finding 6, *id.* at 22; that, given his age (younger individual on the alleged onset date), education (some college), work experience, and residual functional capacity, the plaintiff was capable of performing other jobs that existed in significant numbers in the national economy, Findings 7-9, *id.*; and that he had, therefore, not been under a disability, as that term is defined in the Social Security Act, from the alleged date of onset through the date of the decision, Finding 10, *id.* at 23. The Decision Review Board affirmed the decision, *id.* at 1-3, making it the final determination of the commissioner, 20 C.F.R. § 405.420(a)(2).

The standard of review of the commissioner's decision is whether the determination made is supported by substantial evidence. 42 U.S.C. § 1383(c)(3); *Manso-Pizarro v. Secretary of Health & Human Servs.*, 76 F.3d 15, 16 (1st Cir. 1996). In other words, the determination must be supported by such relevant evidence as a reasonable mind might accept as adequate to support the conclusion drawn. *Richardson v. Perales,* 402 U.S. 389, 401 (1971); *Rodriguez v. Secretary of Health & Human Servs.*, 647 F.2d 218, 222 (1st Cir. 1981).

The administrative law judge reached Step 5 of the sequential evaluation process, at which stage the burden of proof shifts to the commissioner to show that a claimant can perform work other than his past relevant work. 20 C.F.R. § 416.920(f); *Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987); *Goodermote*, 690 F.2d at 7. The record must contain positive evidence in support of the commissioner's findings regarding the plaintiff's residual functional capacity to perform such other work. *Rosado v. Secretary of Health & Human Servs.*, 807 F.2d 292, 294 (1st Cir. 1986).

The plaintiff's complaint also implicates Step 2 of the sequential evaluation process. Although a claimant bears the burden of proof at this step, it is a *de minimis* burden, designed to do no more than screen out groundless claims. *McDonald v. Secretary of Health & Human Servs.*, 795 F.2d 1118, 1123 (1st Cir. 1986). When a claimant produces evidence of an impairment, the commissioner may make a determination of non-disability at Step 2 only when the medical evidence "establishes only a slight abnormality or combination of slight abnormalities which would have no more than a minimal effect on an individual's ability to work even if the individual's age, education, or work experience were specifically considered." *Id*. at 1124 (quoting Social Security Ruling 85-28).

## I. Discussion

### A. Chronic Pain Syndrome

The plaintiff first contends that the administrative law judge was required to find that he suffered from the severe impairments of chronic pain syndrome and an unspecified emotional impairment. Itemized Statement at 2-6. Initially, I am puzzled by the implicit assertion by the plaintiff that he was diagnosed with chronic pain syndrome. The administrative law judge found that the plaintiff's severe back impairment included "residual pain," Record at 10, which he

discussed at some length, *id*. at 12-13. This is consistent with the diagnosis of Dr. Dayton F. Haigney, which is cited by the plaintiff, Itemized Statement at 3, who stated that the plaintiff had been referred to him "for chronic pain management principally in his back related to a lumbar spine surgery in January 2000[.]" Record at 534. This doctor did not diagnose chronic pain syndrome. A psychiatrist who is the only other authority cited by the plaintiff with respect to the existence of chronic pain syndrome says that "the patient has Chronic Pain Syndrome associated with the arthritis and back[,]" Record at 634, but that entry in his progress notes is not related to a physical examination and is most likely a record of what the psychiatrist had been told, as it is not a medical condition normally diagnosed by psychiatrists. At oral argument, counsel for the plaintiff did not identify any such diagnosis in the record.[2]

Even if the administrative law judge had found the plaintiff to be suffering from the severe impairment of chronic pain syndrome at Step 2 of the sequential evaluation process, however, the error is harmless unless the plaintiff can show how the outcome of his application would necessarily have differed as a result. *Bolduc v. Astrue*, Civil No. 09-220-B-W, 2010 WL 276280 (D. Me. Jan. 19, 2010), at *4 n.3. The plaintiff made no effort to do so in his itemized statement, and the administrative law judge's analysis of his claimed pain would not be changed by such a finding at Step 2. Record at 12-13. Therefore, the plaintiff takes nothing by his argument with respect to chronic pain syndrome.

### B. Emotional Impairment

The plaintiff makes essentially the same argument with respect to his unspecified "emotional impairment," although he does discuss the evidence in the record in this regard. Itemized Statement at 2-4. On his application for benefits, the plaintiff listed depression and

---

[2] Counsel for the plaintiff stated that Dr. Haigney made such a diagnosis at page 535 of the record, but no such diagnosis appears there. "Chronic pain opioid dependent," which is the diagnosis on that page, may be the same as chronic pain syndrome, but, as laypersons, neither counsel nor the court may so conclude on its own.

4

anxiety as mental conditions that limited his ability to work. Record at 208. The administrative law judge said the following about the plaintiff's claimed mental impairments:

> In the undersigned's judgment, the claimant has not suffered from any severe mental impairments since the alleged date of onset of his disability, as amended. The undersigned finds that the claimant has no mental-impairment-related restrictions on his activities of daily living. As discussed below, he cares for his grade-school age daughter, including preparing meals on a daily basis and providing nurturance, support and guidance (Exhibit 14F). He has engaged in part-time employment (Exhibit 14F). He traveled to Florida in the summer of 2008 (Exhibit 30F). He has searched for work (Exhibit 14F). He can use a motorcycle, and he drives (Exhibits 5E and 6E). He plays games with his daughter (Exhibit 14F). He does cleaning, laundry, household repairs, ironing, mowing and washing of dishes. He makes beds and does some cleaning. He cooks (Exhibit 5E). He shops (Exhibits 5E and 6E). In addition, he could be expected to have only mild difficulties in maintaining social functioning. Although he has some anger issues, he does volunteering at a school (Exhibit 14F). In the summer of 2008, he participated in a court proceeding (Exhibit 30F). He provides nurturance, support and guidance to his daughter (Exhibit 14F). He helps his daughter with her homework (Exhibit 30F). He engages with his daughter's teacher (Exhibit 30F). He would have only mild difficulties in maintaining concentration, persistence or pace. Although he exhibits some perseveration and frustration in connection with his divorce and a custody proceeding, he helps his daughter with her homework (Exhibit 30F). He uses a computer (Exhibit 8E) and the internet (Exhibits 6E and 14F). He does some home design work. There is no evidence suggesting that he would have episodes of decompensation, of extended duration or otherwise.

Record at 17-18.

Counsel for the plaintiff recites several diagnoses by different mental health care providers, at least one of which was made before the alleged date of onset, emphasizing that more than one of the providers assigned the plaintiff a Global Assessment of Functioning ("GAF") in the range of 50 to 60. Itemized Statement at 2-4. Certainly, some of the opinions of these providers could support a Step 2 finding of severe depression, adjustment disorder, personality disorder, anxiety disorder, or bipolar disorder, but that is not the test. Here, the

administrative law judge discussed at length the opinion of James Moran, Ph.D., a clinical psychologist, who saw the plaintiff as a consultant. *Id*. at 14-15. He noted Dr. Moran's assessment of the plaintiff's GAF as 55 to 60, and quoted the definition of that range. *Id*. at 15. He found particularly significant the facts that the treating providers at Tri County Mental Health Services "specifically declined to offer an opinion supporting the claimant's claimed disability status, as his issues [were] deemed to be more physical than mental in nature (Exhibit 30F)." *Id*. (emphasis omitted). He also noted that this agency's records "reflect a remarkable improvement in the claimant's symptoms with prescribed medications," including a conclusion that the plaintiff's depression had been in remission as of June 2008. *Id*.[3] The administrative law judge also discussed the opinions of Lois Leblanc, a licensed clinical professional counselor who treated the plaintiff, including the fact that she did not supply her treatment records and did not specify the ways in which she concluded his cognitive beliefs impaired his functioning. *Id*. at 16.[4]

Much of the administrative law judge's discussion of the plaintiff's alleged mental impairment highlights medical evidence that is inconsistent with a finding that any such impairment is severe. The plaintiff seems to suggest that the administrative law judge was required to consult a medical expert in this regard, Itemized Statement at 6, but it is settled Social

---

[3] At oral argument, counsel for the plaintiff asserted that, if an improvement in the plaintiff's mental condition was indicated by the medical records, the administrative law judge should have awarded benefits for a closed period. No such argument was made in the plaintiff's itemized statement, and issues raised for the first time at oral argument in Social Security cases will not be considered by the court. *Hopkins v. Astrue*, No. 07-40-P-S, 2007 WL 3023493 (D. Me. Oct. 12, 2007), at *5 n.3.

[4] To the extent that the plaintiff means to argue that a finding of moderate limitation caused by a mental impairment in any of the areas of activities of daily life, social functioning, concentration and attention, and ability to function in a variety of work settings *requires* a finding at Step 2 that the impairment is severe, Itemized Statement at 2, he is incorrect. *Walton v. Astrue*, No. EDCV 06-371 AJW, 2009 WL 605235 (C.D.Cal. Mar. 5, 2009), at *6 (and cases cited therein).

Security law[5] that the decision to call a medical expert at the hearing is almost always discretionary with the administrative law judge. *Rodriguez Pagan v. Secretary of Health & Human Servs.*, 819 F.2d 1, 5 (1st Cir. 1987). Similarly, the plaintiff characterizes the administrative law judge's choice of medical evidence on which to rely as "cherry pick[ing]," but that is precisely the role of the administrative law judge. He need not adopt all of any particular provider's report, if he states his reasons for adopting only a portion of it. *See Howard v. Astrue*, No. 06-96-B-W, 2007 WL 951389 (D. Me. Mar. 27, 2007), at *5 ("In this circuit, picking and choosing among experts' opinions does not in itself constitute error.")

The plaintiff also faults the administrative law judge for failing to "re-contact Plaintiff's treating medical providers with his concerns to seek a reconciliation of their views and findings, include GAF scores, with his own." Itemized Statement at 6. An administrative law judge is required to contact a claimant's medical providers only when the evidence presented by the claimant is inadequate, 20 C.F.R. § 416.912(e), or when the administrative law judge "cannot ascertain the basis of" a physician's opinion on an issue reserved to the commissioner, Social Security Ruling 96-5, reprinted in *West's Social Security Reporting Service* Rulings (Supp. 2009), at 127. *See generally Thomas v. Barnhart,* 278 F.3d 947, 958 (9th Cir. 2002) (ALJ's disagreement with treating physician's conclusion not equivalent of finding that evidence from physician is inadequate to make disability determination); *White v. Massanari*, 271 F.3d 1256, 1261 (10th Cir. 2001) ("It is the inadequacy of the record, rather than the rejection of the treating physician's opinion, that triggers the duty to recontact that physician.").[6]

---

[5] The Ruling cited by the plaintiff in support of this argument actually deals with establishing the date of onset of a disability, an issue that is not present in this case. Social Security Ruling 83-20, reprinted in *West's Social Security Reporting Service* Rulings 1983-1991, at 49. It is only in that context that the Ruling says: "At the hearing, the administrative law judge (ALJ) should call on the services of a medical advisor when onset must be inferred." *Id*. at 51.

[6] At oral argument, counsel for the plaintiff asserted that the administrative law judge is required to contact a claimant's treating medical professionals whenever the claimant's testimony is inconsistent with the reports or notes

7

The plaintiff apparently also contends that the administrative law judge was required to give controlling weight to the opinions of his treating medical providers, even though he acknowledges that disability is an issue reserved to the commissioner. Itemized Statement at 5. When, as here, there is conflicting evidence in the record, the opinion of a treating medical provider should not be given controlling weight. 20 C.F.R. § 404.1527(d)(2). There is no indication in the administrative law judge's opinion that he ignored the reports or opinions of any of the plaintiff's providers. With respect to the only such opinion mentioned by the plaintiff, that of Dr. David C. Riss, that "I think he is chronically disabled and the chances of him returning to the workplace and getting better and getting off the medications is rather remote[,]" Record at 707,[7] that is precisely the issue that is reserved to the commissioner, and that opinion by Dr. Riss need not be given controlling weight.

### C. Vocational Expert Testimony

The plaintiff's final argument is that the residual function capacity included in the hypothetical question posed to the vocational expert at the hearing by the administrative law judge "did not include all of Plaintiff's documented non-exertional limitations devolving from his chronic pain syndrome and/or mental impairments." Itemized Statement at 6. The administrative law judge's first question to the vocational expert at the hearing was the following:

> I'd like you to assume a hypothetical claimant . . . who would have been Mr. Hicks' age in October 2006 [,slightly over 45 years]. . . . Possesses Mr. Hicks' educational experience and possesses Mr. Hicks' work history. I'd like you to also assume this hypothetical claimant can lift 20

---

of those individuals. Social Security law, and SSR 96-29 in particular, in fact does not include such a requirement and, if implemented, such a requirement would cause a vast increase in the volume of work to be done by the Social Security Administration. In most cases that come before this court, the claimant's testimony in at least one respect is not consistent with one or more entries in the medical records.

[7] It is also important to note that the language set forth above and in the plaintiff's itemized statement is immediately preceded by "I think he is really hooked on the drugs and I think they are serving a function, and[,]" Record at 707.

8

> pounds – lift and or carry 20 pounds occasionally; lift and or carry 10 pounds frequently; stand for one hour . . . at a time for about six hours out of an eight-hour work day; and sit for about six hours out of an eight-hour work day. Both, both of those would be with normal breaks. The hypothetical claimant can push and or pull within the weight tolerances described for lifting and carrying. The hypothetical claimant can frequently climb ramps or stairs, but should never climb ladders, ropes, and scaffolds. The hypothetical claimant can occasionally balance, stoop, kneel, crouch, crawl. The hypothetical claimant can reach in all directions below the shoulder frequently, but should only occasionally reach overhead. The hypothetical claimant can handle, finger, and feel frequently. The hypothetical claimant should avoid hazards in the work place, like unprotected heights or slippery or uneven walking surfaces.

Record at 77-78.

In response to this question, which corresponds to the physical limitations included by the administrative law judge in the residual functional capacity that he ultimately assigned to the plaintiff, *id*. at 19, the vocational expert testified that the person described could perform the jobs of factory clerk, general clerk, and data examination clerk, *id*. at 78. The only specific limitation that would change this testimony, and that the plaintiff apparently contends should have been included in the hypothetical question, was absences of one to more than three times a month, whether caused by pain or emotional causes. Itemized Statement at 6-7. When this limitation was added to the hypothetical question at the hearing, the vocational expert testified that "employment would not continue." Record at 79-80.

The plaintiff lists the following as the evidence that "support[s]" the second version of the hypothetical question: record of anxiety, medications, side effects, pain, problems with focus and memory, mood "problems," limited social contacts and leaving his home, and assistance in daily chores. Itemized Statement at 6. That is not enough, however, to require remand. In fact, none of the pages of the record cited by the plaintiff in this section of his itemized statement suggests that the plaintiff would miss any time were he to attempt to work on a regular basis. In

9

order to reach the conclusions that the plaintiff contends that the administrative law judge was required to include in his hypothetical question, the administrative law judge would have to draw conclusions from raw medical data,[8] which he is forbidden to do. *Gordils v. Secretary of Health & Human Servs.*, 921 F.2d 327, 329 (1st Cir. 1990).

## II. Conclusion

For the foregoing reasons, I recommend that the commissioner's decision be **AFFIRMED.**

### *NOTICE*

*A party may file objections to those specified portions of a magistrate judge's report or proposed findings or recommended decisions entered pursuant to 28 U.S.C. § 636(b)(1)(B) for which de novo review by the district court is sought within fourteen (14) days after being served with a copy thereof. A responsive memorandum shall be filed within fourteen (14) days after the filing of the objection.*

*Failure to file a timely objection shall constitute a waiver of the right to de novo review by the district court and to appeal the district court's order.*

Dated this 23rd day of June, 2010.

/s/ John H. Rich III
John H. Rich III
United States Magistrate Judge

---

[8] Many of the citations given by the plaintiff in this section of his itemized statement are to his own testimony, which could not in any case, standing alone, provide a basis for a finding that a particular limitation imposed by a physical or mental impairment should be included in a hypothetical question to a vocational expert. *See Arocho v. Secretary of Health & Human Servs.*, 670 F.2d 374, 375 (1st Cir. 1982) (opinion of vocational expert relevant only to extent offered in response to hypothetical questions that correspond to medical evidence of record).